LAW OFFICE
**LABE M. RICHMAN**
ATTORNEY AT LAW
305 BROADWAY, SUITE 100
NEW YORK, NY 10007
TEL (212) 227-1914
FAX (212) 267-2129 OR
(866) 621-0914
E-MAIL: LABE@LABERICHMAN.COM
WEB SITE: HTTP://WWW.LABERICHMAN.COM

By Hand and By ECF

June 2, 2008

Honorable Shira A. Scheindlin
U.S. District Court
500 Pearl Street
New York, NY 10007

          Re:    United States v. Aubrey Powell, Ind. Nos. 07 Cr. 1050 (SAS); 05 Cr. 690 (SAS); Defense Sentencing Memorandum

Dear Judge Scheindlin:

    I am the attorney for defendant and I am writing to the Court in regard to defendant's sentencing scheduled for June 12, 2008 at 3:00 p.m.

    Despite defendant's banishment from the United States, he has repeatedly returned to be with his family, all of whom are in this country. This is the defendant's third illegal re-entry conviction and he is presently before the Court on a new indictment and a violation of supervised release. Despite his clearly recidivist status, there are ample reasons to impose a reduced, non-Guidelines sentence for this fifty three year old man.

                        *                *                *

    One of the factors that the Court should consider in imposing sentence is "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); <u>United States v. Santos</u>, 406 F.Supp.2d 320, 325 (SDNY, 2005)(Sweet, J.). As Judge Sweet noted in

*Santos*, several judges in this district have reduced sentences because illegal re-entry defendants in southern California are given grossly reduced sentences as part of a fast-track program. This defendant was actually arrested in southern California but was sent to New York because he had been seen here and was on supervised release in this district. Accordingly, since the Justice Department is granting substantial reductions for this crime in a different part of the country, this Court, if it wishes, [1] can reduce defendant's sentence to limit the disparity between New York and districts with fast-track programs.

Defendant also received a 16 level upward adjustment for his conviction for being an illegal alien in possession of a firearm for which he only received five months in jail and five months of home confinement. U.S.S.G. § 2L1.2(b)(1)(A)(iii). The Court should reduce defendant's sentence because this particular conviction is less serious than the typical conviction listed in § 2L1.2(b)(1)(A).

According to defendant's sentencing minutes on the gun charge, when a policeman approached his car, in an effort to be cooperative and disclose the existence of the gun, he took it from the floor of the car and placed it on the seat in plain view (S. 3-4). [2] Defendant indicates to me that the gun was left in his car by a man named "Brookey" who was with people in his car prior to the policeman coming over to the vehicle. [3]

---

[1] Such a decision may be within the Court's discretion. The Second Circuit has ruled that the failure to grant a reduction because of the "Fast-Track" program in another district does not make a sentence unreasonable. United States v. Mejia, 461 F.3d 158, 164 (2d Cir. 2006); United States v. Ventura-Mejia, 2006 WL 3308205 (2d Cir. 2006). There is also *dicta* in *Mejia* which indicates that since the fast-track disparities are authorized by Congress, they cannot be the unwarranted disparities mention in § 3553(a)(6). 461 F.3d at 163.

[2] Numbers in parentheses after "S." refer to pages of his sentencing transcript on his firearm case, 94 Cr. 802 (KMW), which is attached.

[3] Defendant notes that his guilt was a close question and that he did not take the case to trial because at the time that he accepted the plea, he had already served the time in jail and he was told that his conviction was not an aggravated felony under immigration law at the time. This apparently was true because his attorney at the sentencing noted that he was now eligible to obtain his green card (S. 2-3), an event which could not have occurred had the crime of

The other more serious crimes listed in § 2L1.2(b)(1)(A) are drug trafficking offenses for which there was a sentence of thirteen months or more, crimes of violence, child pornography offenses, national security or terrorism offenses, human trafficking offenses and alien smuggling offenses. The firearms offenses which require the enhancement also include serious offenses, such as trafficking in firearms and explosive material and use of a firearm in drug trafficking or crimes of violence. U.S.S.G. , § 2L1.2 [Application Note 1(B)(v)]. Defendant's passive possession of someone else's gun for a short period of time does not rise to the level of most of these crimes which trigger the sixteen point enhancement.

Moreover, the use of this enhancement involves double counting because defendant also received criminal history points for this same crime.

Finally, defendant's situation is really tragic. His mother and father, who lived in Jamaica, are now dead. PSR, p. 10, para. 57. The rest of his family all lives in the United States. PSR, pp. 10-11. As his daughter's attached letter makes clear, he is able to make some money in the United States which he uses to help support his family. Also, see, PSR, p. 11, para. 64 ("he has always provided for his children"). However, the defendant and the rest of the family says that he is unable to obtain work in Jamaica as an uneducated man of 52 in a depressed economy.

In the Justification section of the PSR, the probation officer rhetorically asks: "Why he continues to cause stress on his family by subjecting himself to incarceration is hard to comprehend." PSR p. 18. The truth of the matter is that it does not take a lot of imagination to comprehend that an older man with no friends or relatives in a dangerous country where he has no job or support system would violate the law to be with his beloved wife, numerous children, and friends. His life in Jamaica is so bereft of love and family, that it is depressing beyond belief.

Moreover, it should also be noted that the officer's premise is also fallacious because it is just as stressful for the family when defendant is trying to survive in Jamaica

---

conviction been an aggravated felony.

with no job or family and the country can be very dangerous. Moreover, rather than helping his family, which he can do when he is here, his banishment to Jamaica also puts stress on his family who must find money to support him over there. The probation officer's questionable statement really undermines the value of her judgment.

The family's comments in the PSR, and Dione's heartfelt letter make clear that defendant is a man is who loved greatly by his large family. The defendant and his family understand that he must be punished for his illegal actions. However, the penal sanction should be tempered by the mitigating facts inherent in this case. For these reasons we ask for a sentence considerably below that recommended by the Probation Department.

We thank the Court for its attention to this submission.

                              Respectfully submitted,

                              Labe M. Richman

cc: AUSA Jeff Alberts

June 1, 2008
Dionne Powell
1542 Pea pond Road
Bellmore, New York 11710

Dear Judge Scheindlin,

We are writing to you on behalf of our father Aubrey Powell. I know that you have heard this before, but our dad is a great father and a wonderful human being. I know that he disobeyed the law by coming back into the country illegally, and I know that he should be punished because he did not follow the rules. However, I am asking you to please have mercy on him, and please be lenient with his sentencing.

Our father has a heart of gold. He is kind, unselfish, and a good person, and he would give his last to anyone if they were in need of anything. This man is loved, not just by his family, but by all. When his friends heard that he was arrested they called to say that they were sad to hear what happened. Judge Scheindlin, I heard so many good things about my dad that I wish I can share them all with you, so that you can really understand the character of this man. However, I will try to put as much as I can in this letter.

I know that my dad was foolish for returning to the United States, because I remember when you told him not to come to this country, because he is not wanted here. But he really missed his family, and he was lonely being in Jamaica by himself. He missed his wife, his children, and he wanted to be in New York with his family. I know that we can visit him in Jamaica, but it is not about us visiting him, he really missed being in New York with his family. My Father lived in New York for over 20 years, before he was deported the first time, and when he went to Jamaica, he realized how much it

changed. There was violence, and the cost of living was too much for him. When my father was living in New York, he took odd jobs working any where he could to help his family. He took jobs that most Americans would look down on, and would not take. But he took these jobs in order to provide for his family.

My dad taught all his children to have morals and values. My brother Kemar served in the navy, and my other brother Rashwan graduated from college with a business degree. Also, my sisters and I went to college, and we have our Masters, and Bachelor degrees. He taught his children to work hard and that education was important. I know that you may say that we are all grown, and that he doesn't need to be here, but he has three little one's who still need him. His wife his struggling to provide for his two younger children, and she really needed his help.

My father is not a murderer or a thief. He is just someone who came back into a country illegally, because he wanted to be with his family. We love our dad very much, and as I said before punishment is justified, but your honor, lives were not lost and no one was hurt by his actions. Can you please, give him one more chance.

Respectfully,

Dionne Powell

**ORIGINAL**

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   UNITED STATES OF AMERICA,
 4              v.                            94 Cr. 802 (KMW)
 5   AUBREY OLIVER POWELL,
 6              Defendant.
 7   ------------------------------x
                                              New York, N.Y.
 8                                            February 22, 1995
                                              5:30 p.m.
 9
10   Before:
11                 HON. KIMBA M. WOOD,
12                                    District Judge
13                      APPEARANCES
14   MARY JO WHITE
          United States Attorney for the
15        Southern District of New York
     BY:  JIM GOLDSTON
16        Assistant United States Attorney
17   STANLEY H. WALLENSTEIN
          Attorney for Defendant
18
19
20
21
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS (212) 791-1020
ANN HAIRSTON

```
 1                (Case called)
 2                THE COURT:  We are here for the sentencing of
 3      Mr. Powell.
 4                I have, in addition to the presentence report, a
 5      letter from Mr. Powell's lawyer, Mr. Wallenstein, dated
 6      February 3 which deals with Mr. Powell's immigration status
 7      and the fact that you believe you can take another pass at
 8      the INS.
 9                MR. WALLENSTEIN:  Yes, your Honor.
10                THE COURT:  So I take it, this is a request for
11      me not to order deportation.  Is that why you sent me the
12      letter?
13                MR. WALLENSTEIN:  I didn't have in mind your
14      ordering deportation.  I sent you that letter because
15      illegal alienage is one of the nubs of the claim, one of the
16      elements of the crime.  And I simply want to point out, in
17      the concept of illegal alienage, there are some aliens who
18      are totally illegal with no chance for any benefits, and
19      there are others who do have the ability to change their
20      status from illegal to legal.
21                Powell, in that he has an American citizen wife
22      and six children -- who are here, by the way -- the new law
23      impacts him, in a significant way.  Prior to October 1 of
24      this year, he could not get legal status in the United
25      States without leaving because of the manner of his entry;
```

1   he had entered without inspection 13 years ago.

2   But the new law that was passed effective October
3   1 changes that and permits somebody in that classification
4   with an American citizen wife to get legal status here
5   without leaving the country.  In effect, it gives Powell the
6   ability to reopen his deportation, because he is the
7   beneficiary of that legislation.

8   And I put this to you to try to show to you that
9   this is a point which I think should be taken into
10  consideration when you deliberate within this guideline, and
11  it is something which I don't think would be normally
12  factored into the guideline otherwise.

13  THE COURT:  Thank you for explaining that so
14  well.

15  At this point let me ask, have both you and your
16  client had a chance to fully review the presentence report?

17  MR. WALLENSTEIN:  Yes, we have.

18  THE COURT:  Are there any corrections that you
19  would like to have me make to it?

20  MR. WALLENSTEIN:  There are none.

21  THE COURT:  At this point I will be happy to hear
22  anything in addition which you or your client wish to say.

23  MR. WALLENSTEIN:  There is just one other point
24  that I wish to bring to your attention.  The description of
25  the crime by Powell, which appears in paragraph 8 of the

1  presentence report, there Powell describes the crime as, he
2  was driving a car and was stopped by a policeman.
3         There was a gun down underneath the seat.  It was
4  not in plain view.  There is no great likelihood that the
5  policeman would have seen the gun.  There could have been a
6  search, that is true but, in any event, Powell says that he
7  took the gun and put it on the seat right next to him, in
8  plain view of the policeman.  It is almost like confessing
9  before he was faced with that likelihood or that possibility
10 of a crime being found.
11         I bring that to your attention only because I
12 think that too might be given some consideration in
13 considering where to fit him under the write-up for
14 adjustment and he is given that downward benefit, however,
15 this is a little more than just acceptance of
16 responsibility.  In effect, what he did was show that there
17 was a crime without having even been caught doing it.  Maybe
18 it would not have been found out.  Maybe it would have.  I
19 just give that to you in the hope that it would temper
20 things a little bit, bring it down towards the bottom of the
21 guidelines.
22         Now, under the guidelines, the minimum that he
23 can be given is 10 months.  That puts him in Category C.
24 The minimum that could be given there permits some jail time
25 and some supervised release time -- home confinement,

1   community service, etc.  I think there must be half of the
2   minimum served in jail time.  Powell has already served that
3   much.  He has been in jail, I believe, since September 12,
4   so he has already served somewhat over five months.  If you
5   give him the minimum of five months' confinement, plus the
6   equivalent amount of time in supervised release, either home
7   confinement or otherwise -- should that be done or at any
8   other time, too, he will have to face his immigration
9   problem.  But that is something else.
10          That is all I have to say, your Honor.
11          THE COURT:  Mr. Powell, your lawyer has spoken
12  well for you but, if you would like to add anything, I would
13  be glad to hear from you, too.
14          THE DEFENDANT:  I would like to say that I am
15  sorry for what took place and I hope for some leniency.
16          THE COURT:  Mr. Goldston, does the government
17  have a position on either what point in the guideline range
18  the Court should sentence Mr. Powell or the advisability of
19  a split sentence?
20          MR. GOLDSTON:  No, your Honor, we leave it to the
21  discretion of the Court.
22          THE COURT:  Mr. Powell, please stand.
23          I accept your lawyer's arguments, and I believe
24  that it is appropriate to sentence you at the bottom of the
25  guideline range, which is 10 months.  What I will do is give

1    you a split sentence of five months' incarceration and five
2    months of home confinement.  I will give you the conditions
3    of home confinement in a moment.
4              You will be on supervised release for three
5    years.
6              I impose no fine because you do not have the
7    means to pay one.
8              I impose a special assessment of $50 which is
9    required.
10             While in home confinement, probation will set
11   certain conditions for you.  Should you be employed, you
12   will be able to leave for employment, but you will not be
13   able to leave for recreation.  I will leave it up to
14   probation whether you should be permitted to leave to visit
15   your other children.
16             I note that you will be subject to the standard
17   conditions of supervision during your term of supervised
18   release.
19             By sentencing you to three years of supervised
20   release, I do not intend in any way to interfere with the
21   INS.  Should the INS decide that you should be deported
22   after appropriate INS procedures, it is my intention that
23   you be deported and that it be a condition of your
24   supervised release that you comply with any final order of
25   deportation and that you not re-enter the United States in

1  violation of that order.  It would be a violation of your
2  supervised release if you re-enter the United States during
3  the period of your supervised release.
4      In addition, it will be a condition of supervised
5  release that you cooperate with any directives from the INS
6  and that you keep the probation department apprised of your
7  INS status.  You will be supervised by the district of your
8  residence.
9      I am concerned that you have shown, what I think,
10 is not enough regard for nuturing and supporting your
11 children.  I think you are old enough now to have a good
12 appreciation of what it means to be a father of children.  I
13 have not penalized you in any way for the fact that I think
14 you have not done as good as you should do, but I hope that,
15 in the future, you will just take into account and think
16 about what I am saying.  I hope you think about whether you
17 can take care of children before you have more children,
18 whether you can take care of the ones you have now, support
19 them financially and support them with love and nuturing.
20     You have the right to appeal this sentence.
21     Thank you.
22             ooo0000ooo
23
24
25